

FILED
AUG 30 2011
CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| Dakota Foundry, Inc., <br> Plaintiff, <br><br> vs. <br><br> Tromley Industrial Holdings, Inc., <br> Defendant. | CIV. 11- 1026 <br><br><br> **Complaint** |

Plaintiff, Dakota Foundry, Inc., for its complaint against the Defendant, states:

## Preliminary Statement of Parties and Jurisdiction

1. Dakota Foundry, Inc. ("Dakota Foundry") is a South Dakota corporation with its principal place of business in Webster, South Dakota.

2. Tromley Industrial Holdings, Inc. ("Tromley") is a corporation with its principal of business outside the State of South Dakota.

3. Kloster Foundry Products is a division of Tromley Industrial Holdings, Inc. that manufactures and sells "Kloster" brand industrial equipment for use by foundries.

4. The amount in controversy between the parties exceeds $75,000.

5. There is diversity of citizenship among the parties, and jurisdiction is based on 28 U.S.C. §1332.

## Factual Allegations

6. On or about December 18, 2009, Tromley offered to sell and install a system for producing sand molds at Dakota Foundry's plant in Webster.

7. The system Tromley offered Dakota Foundry included, among other things, a Kloster sand mixer and related equipment, Kloster power conveyors and related equipment, upgrading and retrofitting of an existing Kloster rollover machine that Dakota Foundry already owned, and an automated control system.

1

8. Tromley represented to Dakota Foundry that the Kloster system Tromley was offering to sell Dakota Foundry could be operated by Dakota Foundry at a speed sufficient to produce 20 complete molds an hour.

9. On or about February 24, 2010, Dakota Foundry agreed to purchase the Kloster system Tromley was offering.

10. When it agreed to purchase the Kloster system Tromley was offering, Dakota Foundry relied on Tromley's representations concerning the rate at which the Kloster system would produce molds.

11. Between February 24, 2010 and the time when the equipment was delivered and installed at Dakota Foundry's plant in the fall of 2010, the parties agreed from time to time to make certain additions or modifications to the Kloster system Tromley was preparing to install at Dakota Foundry's plant.

12. Throughout the process of agreeing to any additions or modifications to the Kloster system Tromley was preparing to install at Dakota Foundry's plant, Tromley continued to represent to Dakota Foundry that the system could be operated by Dakota Foundry at a speed sufficient to produce 20 complete molds an hour.

13. At no time did Dakota Foundry ever agree to accept a system from Tromley that was incapable of being operated at a speed sufficient to produce 20 complete molds an hour.

14. On or about October 28, 2010, Dakota Foundry shut down its production to allow Tromley to install the Kloster system.

15. Tromley had represented to Dakota Foundry that installation of the system would take approximately twelve days, with training and limited production being able to be initiated on the twelfth day.

16. In fact, installation of the complete system took more than a month, during which time Dakota Foundry's production continued to be interrupted.

17. On or about November 21, 2010, parts of the newly installed Kloster system first began operating, but with limited production and without the ability to use the rollover machine.

18. On or about December 16, 2010, the newly installed Kloster system first began operating with the ability to use the rollover machine, but still with very limited production.

19. The Kloster system Tromley sold Dakota Foundry and installed at its plant is incapable of being operated at a speed sufficient to produce 20 complete molds an hour.

20. Dakota Foundry has advised Tromley of the failure of its Kloster system to function as promised by Tromley, but Tromley has refused or failed to remedy the failure.

21. The Kloster system Tromley sold Dakota Foundry and installed at its plant has been unreliable and problematic, has had numerous breakdowns and interruptions, and generally is not fit for the purpose for which it was intended.

22. Dakota Foundry has advised Tromley that its Kloster system has been unreliable and problematic, has had numerous breakdowns and interruptions, and generally is not fit for the purpose for which it was intended, but Tromley has refused or failed to remedy the problems.

23. Dakota Foundry ceased making payments to Tromley after it became apparent that the system Tromley installed is not as Tromley had promised and is not fit for the purpose for which it was intended, and Dakota Foundry advised Tromley that no further payments would be made until Tromley remedied the problems with the system.

24. Dakota Foundry's purchase and installation of the Kloster system cost over $930,000, including $686,356 Dakota Foundry has paid to date to Tromley, over $158,000 Dakota Foundry paid to other vendors for products and services related to installation, and over $86,000 that Tromley claims is still due from Dakota Foundry.

### Count 1: Breach of Contract

25. Paragraphs 1 through 24 are incorporated by reference as if set forth again here.

26. Tromley's conduct constitutes a breach of contract.

27. Tromley's breach of contract has caused damages to Dakota Foundry, including (but not limited to) loss of production, loss of profits, loss of customer relations and good will, loss of reputation, and increased costs of labor and material.

### Count 2: Express Warranty

28. Paragraphs 1 through 27 are incorporated by reference as if set forth again here.

29. Tromley's conduct constitutes a breach of express warranty.

30. Tromley's breach of express warranty has caused general, incidental, and consequential damages to Dakota Foundry, including (but not limited to) loss of production, loss of profits, loss of customer relations and good will, loss of reputation, and increased costs of labor and materials.

### Count 3: Implied Warranty

31. Paragraphs 1 through 30 are incorporated by reference as if set forth again here.

32. Tromley had reason to know the particular purpose for which Dakota Foundry intended the mold production system Dakota Foundry was purchasing.

33. Tromley had reason to know that Dakota Foundry was relying on Tromley's skill or judgment to furnish a system fit for Dakota Foundry's particular purpose.

34. Dakota Foundry relied on Tromley's skill or judgment when Dakota Foundry agreed to purchase the Kloster system Tromley was selling, and when Dakota Foundry accepted the Kloster system Tromley installed.

35. Tromley's conduct constitutes a breach of implied warranty.

36. Tromley's breach of implied warranty has caused general, incidental, and consequential damages to Dakota Foundry, including (but not limited to) loss of production, loss of profits, loss of customer relations and good will, loss of reputation, and increased costs of labor and materials.

### Count 4: Negligence

37. Paragraphs 1 through 36 are incorporated by reference as if set forth again here.

38. Tromley was negligent in its design and planning of the system, and in its planning and implementation of the installation.

39. Tromley's negligence caused Dakota Foundry damages, including (but not limited to) loss of production, loss of profits, loss of customer relations and good will, loss of reputation, and increased costs of labor and materials.

WHEREFORE, Dakota Foundry seeks damages for breach of contract, breach of express warranty, breach of implied warranty, and negligence in such amounts as are supported by a showing at trial, including all detriment, damages, and financial losses of any kind sustained as a result of Tromley's wrongful conduct. Plaintiff also seeks prejudgment interest, costs, and such other relief as is deemed just and appropriate under the circumstances.

Dated this 29th day of August, 2011.

TURBAK LAW OFFICE, P.C.

By: Nancy J. Turbak Berry
Attorney for Plaintiff
1301 4th Street NE
Watertown, SD 57201
605-886-8361
nancy@turbaklaw.com

Plaintiff hereby demands trial by jury on all the issues in this action.

Nancy J. Turbak Berry
Attorney for Plaintiff