**FILED**
**JAN 0 5 2012**

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

******************************************************************************

| | | |
|---|---|---|
| DAKOTA FOUNDRY, INC., | * | |
| | * | 1:11-CV-01026 |
| Plaintiff, | * | |
| | * | ORDER AND |
| -vs- | * | OPINION |
| | * | |
| TROMLEY INDUSTRIAL HOLDINGS, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

******************************************************************************

Dakota Foundry, Inc., filed its complaint (Doc. # 1) on August 30, 2011, asserting four claims arising out of the contract it entered into with the defendant, Tromley Industrial Holdings, Inc., to supply and install industrial sand casting equipment. Plaintiff alleges breach of contract, breach of express and implied warranties, and negligence in performance as a result of defendant's alleged failure to (1) deliver a product that is capable of producing twenty sand molds per hour, as represented by the defendant; (2) deliver a product free of mechanical defect and fit for the purpose for which it was intended; (3) meet the installation date represented by the defendant; and (4) remedy defects.

Defendant moved to compel arbitration and to dismiss or, in the alternative, to stay the action in this court pending the arbitration (Doc. # 9); filed a memorandum in support of the motion (Doc. # 10); and filed an affidavit in support of the motion with various exhibits (Doc. # 11). Plaintiff responded (Doc. # 12) and filed an affidavit with attachment (Doc. # 13) in opposition to defendant's motion. Defendant did not file a reply within the fourteen days required by D.S.D. Civ. LR 7.1B, instead filing a reply memorandum and affidavit on November 14, 2011 (Docs. ## 14, 15). As a result, I allowed plaintiff to file a reply to defendant's brief (Doc. # 16). Plaintiff filed a reply memorandum and affidavit within the filing deadline (Docs. ## 18, 17).

## I. BACKGROUND

### A. Standard of Review

"[T]he 'question of arbitrability,' is an issue for judicial determination '[u]nless the parties clearly and unmistakably provide otherwise.'" Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 649 (1986)). The validity of an arbitration agreement in a given situation is a mixed question of law and fact. See First Options of Chi., Inc., v. Kaplan, 514 U.S. 938, 947-48 (1995). In examining whether the parties agreed to arbitrate, this court must ordinarily apply "state-law principles that govern the formation of contracts." Id. at 944. To resolve motions to compel arbitration under the Federal Arbitration Act ("FAA"), courts use procedures used in summary judgment motions. Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003); Par-Knit Mills v. Stockbridge Fabrics Co., 636 F.2d 51, 54 n.9 (3d Cir. 1980). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary" on the issue of arbitrability. Bensadoun, 316 F.3d at 175 (citing 9 U.S.C. § 4). The FAA requires that any issue of material fact that survives summary judgment scrutiny must be tried in court.

Fed. R. Civ. P. 56(a) provides that a movant is entitled to summary judgment if the movant shows "that there is no genuine issue as to any material fact and that [the movant] is entitled to a judgment as a matter of law." This court must view the evidence in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); Davenport v. Univ. of Ark. Bd. of Trs., 553 F.3d 1110, 1112-13 (8th Cir. 2009). The non-moving party cannot rest on pleadings alone but must set forth specific facts showing that a genuine issue of material fact exists through affidavit or other evidence. Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586-587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita, 475 U.S. at 587 (internal quotation marks omitted).

### B. Relevant Factual Background

Plaintiff is a South Dakota corporation with its principle place of business in Webster, South Dakota. Defendant is a parent of Kloster Foundry Products ("Kloster"), which

manufactures, among other items, industrial equipment for foundries and is based in Oregon. The parties entered into negotiations in December of 2009, for the sale and installation of the Kloster system to produce sand molds for casting metal items at plaintiff's facility. The Kloster system included upgrading and retrofitting an existing Kloster "rollover machine" owned by plaintiff and manufacturing and installing a new Kloster "sand mixer," "power conveyors," and "automated control system," for plaintiff's use, along with various appurtenances for each product. This system was to be built in two phases.

Plaintiff maintains that it agreed to purchase both phases of the Kloster system on or about February 24, 2010, in response to the outstanding offers to sell which it contends the defendant tendered on or about December 18, 2009. Plaintiff describes these offers as constituting "price quotes at which [defendant] will sell . . . various Kloster brand equipment" and alleges it lacked the "Standard Terms and Conditions of Sale" sheet ("terms and conditions") containing the arbitration clause at issue. Defendant alleges that the only true agreement governing performance by the parties is its April 19, 2010, offer (that it alleges included the terms and conditions). Plaintiff alleges that the April 19th offer was merely a combination of the two quotes and phases hitherto bargained for–and not a new deal–which also lacked the terms and conditions. It is important to note that none of these "offers" are signed by both parties; nor was there any oral agreement between the parties as to any aspect of the contract in particular. There was no oral mention of arbitration.

As for any dealings after its alleged February 24, 2010, acceptance of the Kloster system, plaintiff describes them as "certain additions or modifications to the Kloster system" that the parties agreed to make "from time to time." Defendant refers to the December 18th offer and these subsequent dealings collectively as "a number of written offers" as plaintiff "reviewed and refined its foundry equipment needs" culminating in the April 19, 2010, offer and that each contained the terms and conditions as "an integral part of [these] quotation[s]" and were provided to plaintiff with each offer. Plaintiff claims that the first time it received the terms and conditions was on or about May 14, 2010, when they were included "on the back side of some of the transmittal forms accompanying drawings [defendant] sent us for review." If true, this means

the terms and conditions were first provided to plaintiff nearly two months after it alleges it provided defendant with its first payment for the Kloster system–$225,800, in response to Invoice KFP-01228-1B, according to plaintiff–which both parties acknowledge was 40% of the purchase price. Defendant did not reference this initial payment, which plaintiff alleges occurred by wire transfer on March 19, 2010. The only reference defendant makes in its filings to a payment is the "down payment" of $225,800 by plaintiff via wire transfer on May 26, 2010, which plaintiff alleges is the second payment of 40% in response to the second invoice sent by defendant, Invoice KFP-01228-2B. Plaintiff's alleged sequence of payments is in keeping with the payment schedule listed in the copy of Invoice KFP-01228-1B.

Defendant says that it began performance on the April 19, 2010, offer, in accordance with the terms and conditions it alleges to have included within the document, after plaintiff paid the May 26, 2010, down payment constituting acceptance of the offer. Plaintiff does not rebut defendant's timeframe for performance, noting only that the equipment was delivered and installed "in the fall of 2010."

### C. Choice of Law

State law is used to resolve issues of fact and law as to whether both parties agreed to arbitrate. In order to determine which state's law applies, "[f]ederal courts sitting in diversity apply the choice-of-law rules of the forum state." Cicle v. Chase Bank USA, 583 F.3d 549, 553 (8th Cir. 2009). In South Dakota, parties may bind themselves to the law of a particular state with a valid choice-of-law clause. See Dunes Hospitality, L.L.C. v. Country Kitchen Int'l, Inc. 623 N.W.2d 484, 488 (S.D. 2001).

The choice of forum clause is part of the same terms and conditions sheet that plaintiff alleges is not binding because it never timely received the sheet. SDCL § 53-1-4 provides that "[a] contract is to be interpreted according to the law . . . of the place where it is to be performed or, if it does not indicate a place of performance, according to the law . . . where it is made." This contract was to be performed (i.e., delivered and installed) mostly in South Dakota as indicated by the fixed nature of the product and service to be provided to plaintiff. This court will apply South Dakota law.

4

## II. **DECISION**

### A. Genuine Issues of Fact Exist as to Whether Any Arbitration Provision Exists in any Document Initially Forming the Contract

The FAA wholesale requirement of enforcing valid arbitration agreements does not foreclose this court's analysis of whether there was any agreement to arbitrate.

The purpose behind adopting the FAA was "to reverse judicial hostility to arbitration agreements and to place arbitration agreements on equal footing with other contracts." Keymer v. Mgmt. Recruiters Int'l, Inc., 169 F.3d 501, 504 (8th Cir. 1999). Federal courts must examine arbitration agreements in the same light as any other contractual agreement, utilizing applicable state law. See id. The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see also SDCL § 21-25A-1. The FAA's emphasis on resolving "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983), cannot operate to ignore the lack of intent to agree to arbitration. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995). "Thus, a party cannot be forced to submit to arbitration any dispute that he has not agreed to submit." Keymer, 169 F.3d 501, 504 (8th Cir. 1999).

Defendant must show that there is no issue of material fact as to whether the terms and conditions were presented when there existed a meeting of the minds necessary to form all elements of a contract. See SDCL § 53-3-3; Melstad v. Kovac, 723 N.W.2d 699, 707 (S.D. 2006) (noting that whether parties to a contract had a meeting of the minds is a question of fact). Genuine issues of material fact exist (1) as to whether defendant validly and timely conveyed the terms and conditions to plaintiff by including them on the back side of some of the transmittal forms accompanying drawings sent for plaintiff to review and (2) whether plaintiff's part

5

payment on May 26, 2010, constituted acceptance of the terms and conditions it allegedly first received on May 14, 2010. I will explain further.

Plaintiff claims it did not receive the terms and conditions until they were "tacked" onto three transmittal forms in mid-May, nearly a month after the April 19, 2010, transaction which plaintiff says did not include the terms and conditions. On the first question, defendant fails to meet its burden necessary to compel arbitration.

The next question is whether plaintiff accepted these terms, along with the other terms of the April 19, 2010, offer by making a part payment via wire transfer on May 26, 2010. The question of mutual consent is determined by considering the parties's actions, as well as their words, In re Estate of Neiswender, 660 N.W.2d 249, 253 (S.D. 2003), and "[a]n offeree that takes the benefit of services offered is bound by the terms of the offer if the offeree had a reasonable opportunity to reject them." Masteller v. Champion Home Builders, Co., 723 N.W.2d 561, 565 (S.D. 2006) (citing E. ALLAN FARNSWORTH, CONTRACTS § 3.15, at 156 (2d ed. 1990)). The operative question then becomes whether as a matter of law the terms and conditions were attached to the benefit received by plaintiff–in this case, the delivery and installation of the Kloster system.

In Masteller v. Champion Home Builders, 723 N.W.2d 561 (S.D. 2006), Masteller bought a home manufactured by Champion. The purchase agreement contained warranties but no reference to arbitration or a future arbitration clause. After the home was installed, Masteller received Champion's "Homeowner's Guide, Limited Warranty and Arbitration Agreement," which he summarily signed. Later, Masteller repeatedly called upon Champion to perform work on his home in accordance with the warranty. Eventually, he sued, contending that the home had defects at the time of delivery which Champion failed to remedy. Id. at 562. Champion brought a motion to compel arbitration, contending that not only did the Mastellers sign the Homeowner's Guide, but that they reaped the benefits of the warranty contained therein, and should thus be bound to its burdens as well. Id. at 563. The Court agreed with Champion's interpretation of the law but rejected Champion's application of it. Noting that Masteller cited

6

the warranty found in the original purchase agreement as the sole basis for their claims of breach of implied and express warranties and that the purchase agreement lacked any reference to arbitration, the Court affirmed the trial court's denial of Champion's motion to compel arbitration. Id. at 566. Simply put, the benefit relied upon by the plaintiffs did not include the burden of arbitration, even if the plaintiffs subsequently signed a document containing essentially the same warranty with an arbitration clause.

Applied to the instant facts taken in a light most favorable to the plaintiff, plaintiff first received the terms and conditions with a May 14, 2010, transmittal letter containing references to industrial schematics or drawings. The court cannot find as a matter of law that these documents conveyed the benefit of the delivery and installation of the Kloster system to the plaintiff. Our law places primacy upon documents containing all elements of a contract, so as to indicate a true meeting of the minds–the full benefit of a contract cannot be conveyed without a meeting of the minds. See Vander Heide v. Boke Ranch, Inc., 736 N.W.2d 824, 832 (S.D. 2007). Thus, even though plaintiff partially paid defendant after these terms were allegedly tendered for the first time in the transmittal letter, the court cannot find as a matter of law that such payment constituted acceptance of every obscure term sent in every obscure transmission between the parties prior to final payment. Taken in a light most favorable to the plaintiff, then, there are genuine issues of fact regarding the arbitrability of this controversy. The motion to compel arbitration should be denied.

### B.   Genuine Issues of Fact Exist as to Whether Plaintiff Violated Any Duty to Read Claimed Incorporated Terms

In defendant's reply brief, defendant makes the assertion that "failure to read or inquire about incorporated terms does not avoid their application." The law supports what defendant characterizes as the offeree's duty to "read" relevant terms, even if the terms so referenced are found in another attached document. The facts taken in a light most favorable to plaintiff indicate that plaintiff did not violate any duty.

Arbitration clauses may be incorporated by reference. However, terms incorporated by reference are only valid so long as it is "clear that the parties to the agreement had knowledge of and assented to the incorporated terms." 11 WILLISTON ON CONTRACTS § 30.25. "Notice of incorporated terms is reasonable where, under the particular facts of the case, 'a reasonably prudent person should have *seen*' them." One Beacon Ins. Co. v. Crowley Marine Servs., Inc., 648 F.3d 258, 268 (5th Cir. 2011) (emphasis added) (citation omitted).

> Although neither physical attachment nor specific language is necessary to incorporate a document by reference, the incorporating instrument must clearly evidence an intent that the writing be made part of the contract. When the question of whether another paper or term has been incorporated by reference depends on the "exercise of speculation, surmise and conjecture" the court will refuse to rewrite the contract.

Forge v. Smith, 580 N.W.2d 876, 881 n.21 (Mich. 1998) (quoting United Cal. Bank v. Prudential Ins. Co., 681 P.2d 390, 411 (Ariz. 1983)); *see also* Power Servs., Inc. v. Interface Const. Corp., 553 F.3d 1150, 1155 (8th Cir. 2009) (applying Missouri contract law, utilizing the same standard). In other words, any "duty to read" on the part of the offeree resolves itself as a "reasonably prudent person" standard and does not necessarily include a duty to proactively inquire.

Defendant cites Morgan v. Smith Barney, Harris Upham & Co., 729 F.2d 1163 (8th Cir. 1984), as an example of a court affirming an arbitration clause incorporated by reference in another agreement. In that case, a former account executive with the defendant brokerage firm, brought suit against the firm for slander and prima facie tort. Id. at 1164. The firm argued that plaintiff bound himself to arbitrate any controversies arising out of employment when he executed Form U-4, an application for membership in the New York Stock Exchange. Id. The specific provision read: "I agree to abide by the Statute, Constitution, Rules, and By-Laws [of the NYSE] as any of the foregoing are amended." Id. One of the NYSE rules, Rule 347, stipulated that any controversy in employment between a "registered representative" (plaintiff) and a "member organization" (defendant) should be settled by arbitration. Id. The court found that the plaintiff was indeed bound to arbitrate this controversy on those claims arising out of his term of

8

employment. Id. at 1168. Thus, plaintiff signed a legal agreement binding plaintiff to a set of "clauses" embodied in the Statute, Constitution, Rules and By-Laws of the NYSE. In other words, a reasonably prudent person would know to check the myriad of different rules and regulations–even if only two of them regarded arbitration–that were incorporated by reference in a single contractual provision. This court case provides the most liberal interpretation of a properly incorporated provision and thus helps to define the outer confines of a reasonably prudent person standard.

With the widespread accessibility of the Internet, companies are turning to posting their general terms and conditions online and incorporating them into a physical document by reference to the Internet site where they are located. Some courts are accepting that practice. *See* Schwartz v. Comcast Corp., 256 F. App'x 515, 520 (3d Cir. 2007); Pentecostal Temple Church v. Streaming Faith, LLC, No. 08-554, 2008 WL 4279842, at *5 (W.D. Pa. Sept. 16, 2008). There is no claim here of any such posting.

The one common thread throughout these disparate cases is that the language of the reference to the incorporated provision within the agreement directs the offeree to the source of that provision. The facts in this case differ on that point. Namely, the only reference to the location of the terms and conditions– "attached"–on the December 18, 2009, and April 19, 2010, offers is alleged by plaintiff to be incorrect. The document was not attached, and there was no independent means for plaintiff to obtain the referenced material–whether by reference to an Internet site or to a particular document already possessed by plaintiff.

This court is unable to find any duty that the law imposes upon an offeree to directly inquire under the facts of this case. Instead, "a party is excused from the terms of a[n incorporated] contract where he never had access to the contract and thus could not make himself aware of its terms." Schwartz, 256 F. App'x at 520 (citing Quiles v. Fin. Exch. Co., 879 A.2d 281, 286-87 (Pa. Super. Ct. 2005) (involving an arbitration provision in a separate document)). "The chief consideration when determining the validity of contractual terms . . . is whether *the party to be bound* had *reasonable notice* of the terms at issue and whether the party manifested

9

assent to those terms." One Beacon Ins., 648 F.3d at 269 (emphasis added). In other words, if any party has a duty, it is the offeror who must clearly impose terms restricting the offeree's rights under the contract. This is certainly the case where a party is being asked to give up rights to go before a judge and jury. Here, with the facts taken in a light most favorable to plaintiff, plaintiff, at a minimum, did not have timely notice of the terms and conditions until after it paid 40% of the contract price. Under plaintiff's version, it was then too late to add the arbitration language.

### C. Genuine Issues of Fact Exist as to Whether the Terms and Conditions Attached to the E-mailed Quotations are Binding

Defendant claims in affidavits that plaintiff was given the standard terms and conditions, albeit in a form with a different title than that filed in an earlier docket, in an e-mail attachment sent July 24, 2009, nearly eight months before the December 2009 offers were accepted by plaintiff. Plaintiff has denied this. Defendant contends that plaintiff at least knew of the existence of these terms and conditions at a time before plaintiff alleges it received and accepted the contract terms. In other words, using the framework above, defendant argues that a reasonably prudent person would have known that the terms and conditions referenced in the December 2009 offers relate back to the terms attached to the July 24, 2009, e-mail. This is possible but the question deals with issues of fact.

Defendant cites Isp.com L.L.C. v. Theising, 805 N.E.2d 767, 776 (Ind. 2004), noting that "[t]here is no requirement that an arbitration clause be included in all potentially relevant documents to be binding if it covers the dispute at hand." However, the very next sentence, unquoted by the defendant, helps to clarify the Court's position in this case: "As long as one *agreement* between two parties includes an agreement to arbitrate, that is enough to bind both parties to that undertaking." Id. (emphasis added). In this case, the July 24, 2009, e-mail contains no fundamental agreement by the parties setting out performance; namely, it did not involve a meeting of the minds that encapsulated all the terms of the contract. Applying the

10

Masteller case, plaintiff is not claiming any benefits from a quote for two "attrition lump reducers" which do not appear in the December 2009 offers or in any subsequent offer.

Defendant notes, uncontroverted by plaintiff, that defendant sent the terms and conditions attachment with e-mails sent on June 7, June 11, and June 23, 2010, and on July 6, 2010. Plaintiff characterizes these e-mails as addendums and revisions to the older price quotes that constitute the contract. Defendant argues that, by including the terms and conditions within these modifications, which plaintiff subsequently accepted, plaintiff is bound by any terms associated with these modifications. Defendant cites Masteller for the proposition that plaintiff must take on the burdens if it accepts the benefits of such agreements.

Defendant cites Aceros Prefabricados, S.A. v. TradeArbed, Inc., 282 F.3d 92 (2d Cir. 2002). In facts similar to this case, the defendant alleged that it included arbitration provisions that were incorporated by reference within each of the three confirmation orders memorializing three separate contracts to sell steel to the plaintiff. Id. at 95. The defendant appealed the trial court decision denying the applicability of the arbitration clauses because the court found that a letter predating the confirmation orders from the defendant to the plaintiff constituted acceptance of the offer, thereby forming a single contract before the confirmation orders and their arbitration clauses were tendered. Id. The Second Circuit reversed, noting that N.Y. U.C.C. § 2-207(2) governed the disposition of the matter. Id. at 98, 102. That provision, which is also codified in South Dakota at SDCL 57A-2-207, applies to contracts between merchants, and is meant to provide a mechanism for dealing with situations like the instant controversy where a party who is a merchant proposes terms in addition to those found in the offer. In applying this law, the court agreed that defendant's letter actually formed the contract, but it then viewed the written confirmations as proposing "additional terms" which "become part of a contract between merchants unless one of three statutory exceptions is satisfied." Id. at 99. The UCC, in other words, "presumes that between merchants additional terms will be included in a contract." Id. at 100. The court disposed of prior precedent that categorically deemed arbitration provisions as "materially altering" the contract, one of the three statutory exceptions to the automatic

11

incorporation of additional terms between merchants. Id. The court attributed its actions to the FAA, which it felt required that it do away with such precedents that condone "discriminatory treatment of arbitration agreements." Id. Instead, the court found that plaintiff failed to meet its burden to show that the arbitration provisions in the confirmation orders caused any "subjective or objective surprise" or hardship on their part, as is required in the Second Circuit's analysis of whether a material alteration exists. Id.

Applying this case to the instant facts, plaintiff and defendant are likely not "merchants" for purposes of the U.C.C. SDCL 57A-2-104(1) defines "merchant" as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction." A party's status as a merchant is a question of fact. Colton v. Decker, 540 N.W.2d 172, 179 (S.D. 1995). Relevant commentary to the U.C.C. provides that the term "merchant" as used in U.C.C. 2-207 "only appl[ies] to a merchant in his mercantile capacity." U.C.C. 2-104, cmt. 2. Plaintiff certainly held itself out as having knowledge about the foundry business, for which the foundry equipment purchased was integral. However, viewing the facts in a light most favorable to plaintiff, there is, at a minimum, a genuine issue whether defendant dealt with a plaintiff who engaged in the frequent resale or lease of foundry equipment, as in a mercantile capacity, but rather with an entity that only uses foundry equipment in its daily production of metal products. The products sold do not likely invoke plaintiff's mercantile capacity and this contract is likely not one between merchants. Accordingly, SDCL 57A-2-104(1) is inapplicable to this controversy, meaning the terms and conditions attached to the June 7, June 11, June 23, and July 6, 2010, e-mails are not automatically incorporated into the contract "as between merchants."

Defendant is correct that Masteller stands for the proposition that if an offeree actually receives the benefit of an agreement, then the offeree must also bear the terms that come with it. 723 N.W.2d at 566. Defendant argues that because plaintiff accepted the modifications contained in the quotations attached to the June 7, June 11, June 23, and July 6, 2010, e-mails,

the terms and conditions similarly attached should also be binding on plaintiff. The facts do not mandate such a conclusion.

On the June 7 and June 11, 2010 e-mails, plaintiff is correct that these e-mails constitute mere addendums to the KFP-01228-2 invoice, an invoice which plaintiff alleges did not contain the terms and conditions. This argument relies on language in these quotations that plaintiff and defendant are "bound by the same Terms & Conditions as contained in the original quotation (#KFP-01228-2)." Since that quotation referenced in the June 7, 2010, e-mail allegedly did not contain the terms and conditions, that omission applies to the June 7 and June 11, 2010, e-mailed addendums, which may well make the attached terms and conditions to those e-mails inapplicable.

As for the June 23, 2010, and the July 6, 2010, e-mails that are derivatives–these e-mails provide some support for defendant. In the June 23 e-mail, defendant attached a price quote (KFP-01282) and the terms and conditions. This price quote contained the elements of Phase II of the Kloster project, elements that were originally accounted for in Invoice KFP-01228-1, for which plaintiff had already paid 80% of the price. The June 23 price quotation contained modifications to that original billing, which plaintiff presumably accepted. Unlike the June 7, 2010, quotation, defendant does not include language that limits the terms of the offer to an original quotation that did not allegedly contain the terms and conditions. The June 23 quotation provides terms additional to or different from those offered or agreed upon in the KFP-01228-1 and KRP-01228-2 quotations, but it contains no language otherwise limiting acceptance to the price quotation and not the attached terms and conditions. This quotation may be a modification of the contract without reference to the terms and conditions of preceding agreements but with reference to the attached terms and conditions. That remains to be seen.

Masteller relies in part on E. Allan Farnsworth's treatise on contracts: "An offeree that takes the benefit of services offered is bound by the terms of the offer if the offeree had a *reasonable opportunity to reject them.*" E. ALLAN FARNSWORTH, CONTRACTS § 3.15, at 156 (2d ed. 1990) (emphasis added). Plaintiff's affidavits claim "[i]t was not particularly unusual for

Tromley's emails to include extraneous attachments that had nothing to do with Dakota Foundry." In a course of dealing where, as plaintiff asserts, defendant attaches to its e-mails invoices from customers of Dependable Foundry and Redford-Carver Foundry, or from other Kloster customers, or fails to include attached terms and conditions entirely, it may be reasonable to conclude that in the June 23, 2010, e-mail, defendant merely made the mistake of including terms and conditions from another contract involving another customer with the Dependable Foundry and Redford-Carver Foundry companies. This is bolstered by the observation that the insertion of terms and conditions came nearly four months after plaintiff's acceptance of both phases of the Kloster system purchase and installation, and it comes immediately after defendant mistakenly attached them to multiple e-mails containing quotation addendums that explicitly denied their application. To finally insert terms and conditions after failing to do so with multiple prior price quotations and after plaintiff paid 80% of the purchase price may seem to be a random act which could constitute both a surprise and a hardship for plaintiff. A business entity, let alone a less-experienced party, with a history of fielding these haphazard communications from another party might not necessarily know which attachments are actually meant for its course of dealings. At a minimum, defendant's business practices may well have caused a great deal of confusion.

Taking the facts in a light most favorable to plaintiff, plaintiff did not have a reasonable opportunity to reject the terms and conditions attached to the June 23, 2010, e-mail because plaintiff did not know they might apply until the defendant asserted that they did in fact apply by filing this motion to compel arbitration. For this reason, Masteller does not support defendant's contention. Defendant's motions should be denied.

### III. CONCLUSION

Defendant, in previous contractual documents, stated that terms and conditions were "attached." These claims are disputed. Plaintiff had, based on its version, already accepted the offer to sell, agreed to the price, and made substantial partial payments, before May 14, 2010.

14

Subsequent e-mailed quotations attempting to add the terms and conditions not part of the original meeting of the minds are not necessarily binding on plaintiff.

IV. **ORDER**

Based upon the foregoing,

IT IS ORDERED that defendant's motion, Doc. # 9, to compel arbitration and to dismiss, or, alternatively, stay proceedings pending arbitration is denied.

Dated this 5th day of January, 2012.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: Barbara J. Paepke
DEPUTY
(SEAL)

15